IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RASHEEM CARTER; PETER WIRTH,
*on behalf of the estate of Ervin Burton,*
*deceased; and* ERVIN BURTON, SR.,

      Plaintiffs,

v.                                                                         No. 1:23-cv-01013-LF-JHR

UZGlobal LLC; Ozmany Hanna Roldan;
Amazon.com Inc.; Amazon.com Services,
LLC; Amazon Logistics, Inc.; and
Ryder Truck Rental, Inc.,

      Defendants.

**<u>PLAINTIFFS' RESPONSE TO DEFENDANT AMAZON.COM, INC.'S MOTION FOR PROTECTIVE ORDER AND ALTERNATIVE MOTION FOR SHARING PROVISION</u>**

COME NOW, RASHEEM CARTER; PETER WIRTH, on behalf of the estate of Ervin Burton, deceased, and ERVIN BURTON, SR., Plaintiffs, by and through counsel, and hereby submit this Response in opposition to Defendant Amazon.com, Inc.'s ("Amazon") Motion for a Protective Order. Plaintiffs respectfully request that the Court deny Amazon's motion or, at the very least, impose a sharing provision and reject Defendant's "attorney's eyes only" provision to ensure fair access to discovery materials.

## I. INTRODUCTION

This case involves a tragic incident in which an Amazon delivery driver killed Plaintiff Burton and seriously injured Plaintiff Carter. Plaintiffs have sought certain discovery materials from Amazon relevant to this case, including documents and information regarding the delivery driver, the vehicle, and Amazon's policies. In response, Amazon seeks a protective order that would limit the dissemination of these materials. Plaintiffs object to this request, because Amazon has failed to meet the necessary burden for a protective order and such an order would unduly

restrict Plaintiffs' ability to pursue justice in this case. The motion is contrary to the principles of open court proceedings. Alternatively, at minimum, a sharing provision should be included and the documents should not and cannot be limited to "attorney's eyes", which should be granted since Amazon routinely enters into protective orders with sharing agreements. *Exhibit 1.*

## II. STANDARD FOR PROTECTIVE ORDERS

**a. Before a Protective Order may be entered, Amazon must show "Good Cause" by providing specific examples of a "Clearly Defined and Very Serious Injury."**

Fed. R. Civ. P. 26(c) provides that a party from whom discovery is sought may seek a protective order from the court where it can demonstrate good cause for the entry of such an order. See Fed. R. Civ. P. 26(c). However, it is the moving party's burden to demonstrate good cause. *Id.*; see e.g. *Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 53, 56 (D. Conn. 2004). As the Court noted: "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. To satisfy the burden of showing good cause, the moving party must demonstrate that disclosure will work a clearly defined and very serious injury. The movant must also show that there will indeed be harm by disclosure." *Id.* (internal citations and quotations omitted). "[S]tereotyped and conclusory statements" are insufficient to meet Defendants' burden. *Joseph L. v. Connecticut Dept. Of Children and Families*, 225 F.R.D. 400, 402 (D. Conn. 2005) (quoting *Havens v. Metro Life Ins. Co.*, 1995 WL 234710 *10 (S.D.N.Y. April 20, 1995)(quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). "As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Travelers's Ins. Co. v. Allied-Signal Inc. Master Pension Trust*, 145 F.R.D. 17, 18 (D. Conn. 1992)(internal citations and quotations omitted).

### III. AMAZON HAS FAILED TO DEMONSTRATE GOOD CAUSE

Defendants' Motion is notably deficient and fails to satisfy Defendants' burden to demonstrate to the Court that "a clearly defined and very serious injury" will occur absent the entry of Defendants' proposed protective order. The party seeking the protective order bears the burden of showing good cause" and that "the order is necessary to protect a party or person from annoyance, embarrassment, oppression, or undue burden." *Archer v. W. Elec. Co., 110 F.R.D. 704, 707 (D. Colo. 1986)*. Under Federal Rule of Civil Procedure 26(c), a party seeking a protective order must demonstrate good cause by providing a particular and specific demonstration of fact *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch*., 2007 U.S. Dist. LEXIS 33923.The burden is on the moving party to show that the disclosure of information will result in a clearly defined and serious injury. Courts have consistently emphasized the importance of open access to discovery materials and have required a strong showing of harm to justify protective orders. Courts in the Tenth Circuit typically apply a balancing test to determine whether the burden of disclosure outweighs the need for the requested discovery. This includes considering whether the information sought is relevant to the case and whether the party seeking the protective order has shown a legitimate need to limit dissemination of the information. *Huddleson v. United States,* 627 F.3d 1083, 1087 (10th Cir. 2010).

### IV. AMAZON HAS FAILED TO MEET ITS BURDEN FOR A PROTECTIVE ORDER

Amazon's motion for a protective order is premised on the assumption that disclosing the requested discovery will result in harm. However, Amazon has not demonstrated specific harm or legitimate grounds for shielding this critical information from Plaintiffs' access. Amazon's blanket request for a protective order is overly broad and fails to meet the good cause standard set by the Tenth Circuit. Further, it is disingenuous to demand a gag order on materials widely available in

the public forum. **A**mazon hosts its own webpage (Amazon Web Services) on Amazon and publishes videos having its engineers discuss Amazon's amazing transportation technology including the Relay ap. As such, there is nothing to protect. Moreover, there are a plethora of YouTube videos regarding their systems.

(ie: https://drive.google.com/file/d/1ZZs1Xpzzr_lfiDjGlqx-SLOd8ikVq-VM/view?usp=sharing).

The general principle is that good cause requires a particular and specific demonstration of fact. This is not the case in defendant's motion.

Plaintiffs are entitled to access the materials necessary to prove liability and damages in this case. The information sought is not only relevant but essential to the claims at issue. Amazon's failure to provide these materials unnecessarily hampers Plaintiffs' ability to prepare and present a compelling case, especially when such materials may provide insight into Amazon's knowledge of safety practices and its policies for hiring and supervising delivery drivers.

## V. AMAZON'S REQUEST FOR A PROTECTIVE ORDER IS OVERBROAD AND VAGUE

Amazon has not sufficiently articulated why the specific discovery requested would lead to any undue burden or harm. Simply asserting a need for confidentiality does not meet the heightened showing required under *Rule 26(c)*. In fact, courts in the Tenth Circuit have consistently held that protective orders should not be issued merely on the basis of speculative harm. *McNeil v. United States, 508 F.3d 674, 682 (10th Cir. 2007)*.

Further, Amazon's proposed protective order is overly broad in restricting access to all discovery materials. A more tailored approach would be to impose appropriate safeguards, such as limiting the disclosure of certain sensitive materials to only those individuals who need them for the case, such as Plaintiffs' counsel and experts. This would achieve the goal of protecting confidentiality while allowing Plaintiffs' counsel to effectively litigate the case.

## VI. PLAINTIFFS' REQUEST FOR A SHARING PROVISION

In the alternative, should the Court grant any form of protective order, Plaintiff requests that the Court impose a sharing provision, allowing Plaintiffs' counsel and experts to share the discovery materials with Plaintiffs' other experts or co-counsel as necessary to prepare the case and reject defendant's attempt to have items in this litigation designated for "attorney's eyes only." This would ensure that Plaintiff is able to fully investigate the facts of the case, consult with experts, and prepare for trial. **This very Defendant routinely enters into sharing provision agreements.** *See Exhibit 1.* Included herein is an agreed sharing provision with this defendant in New Mexico. *Id.* To argue against it in this court is an insincere attempt to prejudice these plaintiffs, creating a due process issue.

Further, the Tenth Circuit has recognized that sharing provisions are not only reasonable but often necessary to ensure that all parties are able to adequately prepare for litigation. *Harris v. United States, 204 F.R.D. 560, 561 (D. Colo. 2001).* A protective order without such a provision would unduly hinder Plaintiffs' ability to prepare and present a case in which justice is at stake.

While efficiency and truth are a laudable and vital objective of open discovery, there can be no higher good to be derived than the promotion of public safety. Abusive use of non-sharing, restrictive protective orders in cases for the past twenty years have resulted in the Federal Judicial Center suggesting a sharing provision be included in confidentiality orders. As will be shown in this litigation, the documents sought to be produced will show the existence of a hazard to the motoring public. Allowing plaintiffs' lawyers access to an information sharing mechanism is necessary to protect a vital interest possessed by the claimant, namely, the right to have his or her case fully and adequately prepared for trial. Plaintiffs' attorneys should be able to adequately consult with other attorneys handling similar cases (as defense firms and corporate counsel are

able to do). Such an order protects the legal interest of both parties and promotes judicial efficiency during discovery.

In *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982), the court stated: "In this era of ever-expanding litigation expense, any means of minimizing discovery costs improves the accessibility and economy of justice. *Id.* Each plaintiff should not have to undertake to discover anew the basic evidence that other plaintiffs have uncovered. *Id.*

Many courts have held that the sharing of discovery with plaintiffs with similar cases is entirely consistent with the Federal Rules of Civil Procedure. In *Williams v. Johnson & Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970), the court discussed the issue as follows: "In this situation, it is at least theoretically advantageous to the attorneys for plaintiffs in the various suits to share the fruits of discovery. They thus reduce the time and money which must be expended to prepare for trial and are probably able to provide more effective, speedy and efficient representation to their clients. . . . On its face, such collaboration comes squarely within the aims laid out in the first and fundamental rule of the Federal Rules of Civil Procedure: "these rules . . . shall be construed to secure the just, speedy and inexpensive determination of every action." *Rule 1, Fed. R. Civ. P.* Thus, there is no merit to the all- encompassing contention that the fruits of discovery in one case are to be used in that case only." *50 F.R.D.* at 32. See also, *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980), (stating, "There is nothing inherently culpable about sharing information obtained through discovery"); *Burlington City Board of Education v. The United States Mineral Products Co., Inc.*, 115 F.R.D. 188, 190 (M.D.N.C. 1987), ("Permitting plaintiffs to share information helps counter-balance the effect uneven financial resources between parties might otherwise have on the discovery process, protecting economically modest plaintiffs faced with financially well off defendants and improving accessibility to justice. . . . Collaboration

among plaintiffs' attorneys comes squarely within the purposes of the Federal Rules of Civil Procedure.") (citations omitted)). Courts have specifically found that the danger posed by litigants who will share discovered information with similarly situated parties does not constitute good cause to issue a confidentiality order. *Nestle Foods Corp. v. Aetna*, 129 F.R.D. 483, 485 (D. N.J., 1990). An overwhelming majority of federal courts have upheld sharing of discovery produced by litigation, even discovery otherwise subject to confidentiality orders. This overwhelming majority includes the following:

1. Efficient administration of justice requires that courts encourage, not hamstring, information exchanges such as that here involved. *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982).

2. Sharing provisions encourage judicial economy. *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979); cert. denied, 440 U.S. 971 (1979).

3. Sharing acts to prevent defendants from hiding discoverable documents and information. Unfortunately, the history of litigation in the U.S. provides for too many examples of deception by means of confidentiality orders. See, e.g.: *Buehler v. Whalen*, 374 N.E.2d 460 (Ill. 1977) [Ford withheld damaging crash test information]; *Gammon v. Clark Equipment Co.*, 686 P.2d 1102 (Wash. 1984) [Clark's concealment of other accident reports resulted in a new trial]; *Carlucci v. Piper Aircraft Corp.,* 102 F.R.D. 472, 485 (S.D. Fla. 1984) [Defendant destroyed relevant documents]; *Haumerson v. Ford Motor Co.*, 257 N.W.2d 7, 14 (Iowa, 1977) [Defendant concealed testing information], ad infinitum.

**VII. SHARING PROVISIONS ARE APPROPRIATE**

a.      **Discovery Rules Do Not Prohibit Sharing**

Defendant's Motion for Protective Order can essentially be boiled down to one main issue: it does not want a "sharing" provision in the protective order. In reliance, Defendant has stated in its Motion that sharing orders are routinely rejected. This is wrong. Not only are sharing orders universally favored, but this very Defendant has included sharing provisions in numerous cases, including in this very State. *Exhibit 1*. "Sharing" provisions are critical tools in the discovery process and they are universally favored by courts across the country and in the State of New Mexico. The Plaintiffs' Proposed Protective Order (*Exhibit* 2) will facilitate the discovery process and protect Defendant's documents from its competitors.

Similar sharing provisions also are universally favored by courts and commentators across the country. Rule 1 of the *Federal Rules of Civil Procedure* states that the rules of civil procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." The majority of courts readily recognize that sharing discovery materials in these types of complex cases promote judicial efficiency sought by Rule 1 and should be encouraged, not forbidden. In *Deford v. Schmid Products Co.*, 120 F.R.D. 648, 654 (D. Md. 1987), the Court permitted information sharing with counsel having similar cases over defendant's objections, noting: "The plaintiffs' primary argument in favor of disclosure is their desire to share information with other litigants and counsel. This is an appropriate goal under the *Federal Rules of Civil Procedure*, which are intended 'to secure the just, speedy, and inexpensive determination of every action.' Sharing discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs." Another New Mexico Court stated: "The majority of courts that have considered assertions of this

nature authorize the practice of discovery sharing among litigants. . . . [M]ost courts agree that discovery sharing serves Rule 1 interests and does not constitute good cause for entry of a protective order. . . . We find instructive the reasoning of the court in *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (as amended Jan. 9, 1981), recognizing the presumption that pretrial discovery should take place in public and that such presumption 'should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be lengthy process." *Krahling v. Executive Life Insurance Co.*, 959 P. 2d 562, 568 (N.M. App. 1998) (citations omitted). Perhaps the seminal case on "information sharing" arose from the famous "Love Canal" cases where the court reasoned as follows: "Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order. Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purpose of the Federal Rules of Civil Procedure. Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources. This is particularly true in lawsuits where the resources available to the parties are uneven. . . nor is it especially significant that the other litigants might try to "piggy-back" their disclosure proceedings on top of federal discovery are litigants in state court. We perceive no intention in the federal rules that incidental benefits of liberal federal discovery should not accrue to litigants in state courts who are pursuing ancillary lawsuits, provided there is no attempt to exploit the federal litigation discovery process

solely to assist litigation in a foreign forum." *U.S. v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981) (citations omitted).

Similarly, in *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980), the Court stated: "Such collaboration among plaintiffs' attorneys would come squarely within the aims of the *Federal Rules of Civil Procedure* – to secure the just, speedy and inexpensive determination of every action . . . there is nothing inherently culpable about sharing information obtained through discovery. The availability of the discovery information may reduce time and money, which must be expended in similar proceedings, and may allow for effective, speedy and efficient representation."

Courts have recognized that information sharing is "particularly appropriate" in cases, "in which individual plaintiffs must litigate against large, corporate defendants." *Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990). See also, *Hooker*, 90 F.R.D. at 426 (discovery sharing especially necessary where the parties' resources are uneven); *Burlington City Bd. Of Education v. U.S. Mineral Products Co.*, 115 F.R.D. 188, 190 (M.D.N.C. 1987) (sharing protects "economically modest plaintiffs faced with financially well-off defendants and improves accessibility to justice."). This is just such a case where the Plaintiff is an individual of limited means and Defendant is a multi-billion dollar company that operates throughout the world. The courts have strongly stated that justice is furthered by such exchanges: "Information exchange reduces the effort and expense inflicted on all parties, including Ford, by repetitive and unnecessary discovery. In this era of ever expanding litigation expense, any means of minimizing discovery costs improves the accessibility in economy of justice. . . . Each plaintiff should not have to undertake to discovery [sic] anew the basic evidence that other plaintiffs have uncovered. To do so would be tantamount to holding that each litigant who wishes to ride a taxi to court must

undertake the expense of inventing the wheel. Efficient administration of justice requires that courts encourage, not hamstring, information exchanges such as that here involved." *Ward v. Ford*, 93 F.R.D. 579, 580 (D. Col. 1982) (emphasis added).

Judges should encourage techniques that coordinate discovery and avoid duplication. . . . Filing or cross-filing deposition notices, interrogatories, and requests for production in related cases will make the product of discovery usable in all cases and avoid duplicative activity. Relevant discovery completed should ordinarily be made available to litigants in other cases.  MANUAL FOR COMPLEX LITIGATION, Fourth Ed.,§ 20.14.  **It is difficult and indeed unwise to have an absolute prohibition on discovery sharing,** given the extraordinary high cost of litigation and the reality that discovery accounts for the largest component of that expense in many cases. Barring sharing smacks too much of requiring each litigant to reinvent the wheel and not surprisingly it has been rejected on that basis by some courts. As Judge Wisdom put it, there "is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another." Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* l05 Harv. L. Rev. 427,497 (1991) (emphasis added). *Accord United States* v. *Hooker Chems. & Plastics Corp.,* 90 F.R.D. 421,426 (W.D.N.Y. 1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the *Federal Rules of Civil Procedure. . ..* Such cooperation among litigants promotes the speedy and inexpensive determination of every action."); *Williams v. Johnson & Johnson,* 50 F.R.D. 31, 32, (S.D.N.Y. 1970) (same); *Duling v. Gristede* 's *Operating Corp.,* 266 F.R. D. 66, 75-76 (S.D.N.Y. 2010) (same); *Foltz v. State Farm Mutual Auto. Ins. Co.,* 331 F.3d 1131, 1131-32 (9th Cir. 2003) (same).

**b. Many Courts Have Permitted Discovery Sharing**

Besides the fact that this defendant routinely enters into sharing provisions, numerous other courts have spoken with equal force and conviction about the desirability of information exchange among plaintiff attorneys with similar cases. See *Streckenbach v. Toyota Motor Corp, et al.,* 2006 U.S. Dist. LEXIS 38748 at #12 (D. Colo., June 12, 2006) ("Sharing discovery furthers the important public policy of possibly saving lives and stopping injuries. . . ."); *Waelde v. Merck, Sharp and Dohme*, 94 F.R.D. 27, 28 (E. D. Mich. 1981); *Upjohn Antibiotic Cheocin Prod. Liab. Litigation*, 81 F.R.D. 482, 484 (E.D. Mich. 1979), Aff'd, 664 F.2d 114 96th Cir. 1981); *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973); *Williams v. Johnson and Johnson*, 50 F.R.D. 31, 32 (S.D.N.Y. 1970; *Farnum v. G.D. Searle and Company*, 339 N.W. 2d 384, 389 (Iowa 1983). Courts have welcomed the information exchange of proprietary or trade secret information between similarly situated plaintiffs as furthering the goals of the modern rules of discovery. The list of cases in which courts have approved a sharing agreement amongst attorneys with similar cases is long. *See e.g., Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 n.3 (11th Cir. 1985) ("If formal proceedings occur in one court and are relevant to issues being presented in another court, judicial economy would mandate their availability"); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964), cert. denied, 379 U.S. 900 (1964) (holding that even if the discovery materials contained "trade secrets," the Court would not forbid information sharing with litigants in other cases); *Kraszewski v. State Farm Ins. Co.*, 139 F.R.D. 156, 160 (N.D. Cal. 1991) ("It simply does not make sense to force class counsel to reinvent the wheel and to promulgate discovery requests and take depositions when much of the same discovery has already taken place in this action"); *Nestle Foods Corp. v. Aetna Cas. Ins. Co.*, 129 F.R.D. 483, 486 (D.N.J. 1990) ("The courts have emphatically held that a protective order cannot

be issued simply because it may be detrimental to the movant in other lawsuits. Using fruits of discovery from one lawsuit in another litigation, and even in collaboration among various plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure"); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539 (N.D. Ind. 1991) (the sharing of discovery materials ultimately may further the goals of Rule 1 by eliminating the time and expense involved in 'rediscovery'); *In Re Air Crash Disaster at Detroit Metro Airport on August 16, 1987*, 130 F.R.D. 634, 639 (E.D. Mich. 1989) (Allowing information sharing and noting: "Plaintiffs should be in a position to exchange information with other litigants with similar claims in order to develop their cases more fully");

### c. Sharing Discovery Orders Prevent Discovery Abuse

Sharing orders are not novel or new ideas, as document sharing in litigation has been around since at least the 1980's. The sharing approach is one of the most effective ways to counter a systematic approach to discovery abuse, the prime component of which is to keep injured plaintiffs and their counsel truly ignorant of key documents and testing. Sharing orders help make the entire process more transparent, trustworthy, and verifiable. *Parkway Gallery Furniture, Inc. v. Kittinger Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 269 (M.D.N.C. 1988. "The sharing of information between the parties usually promotes efficient and inexpensive litigation, conserves judicial resources, and serves to counterbalance uneven financial resources which may otherwise deny access to justice to the more financially modest party." *Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F.Supp. 218, 219 (D. Mont. 1986) (permitting information sharing in similar cases, noting that "[o]f the courts that have considered protective orders of the nature proposed by defendant, an overwhelming majority have refused to grant any type of protection from dissemination"). *Raymond Handling Concepts Corp. v. Superior Court,* 45 Cal. Rptr. 2d 885, 887 (1995); *Cowan*

*v. General Motors Corp.,* 2007 WL 1796198 (D. Kan. June 19, 2007); *Brownlow v. General Motors Corp.,* 2007 WL 2712925 (W.D. Ky Sept. 13, 2007); *Kamp Implement Co. v. J.I. Case Co. ,* 630 F. Supp. 218 (D. Mont. 1986); *Pincheira v. Allstate Insurance Co.,* 190 P.2d 322 (N.M. 2008); *Miller v. General Motors Corp.,* 192 F.R.D. 230 (E.D. Tenn. 2000); *Idar v. Cooper Tire & Rubber Co.,* 2011 WL 688871 (S.D. Tex. Feb. 17, 2011). "Litigation is not a game. It is the time-honored method of seeking the truth, finding the truth, and doing justice.: *Haeger v. Goodyear Tire and Rubber Co.*, Civil Action No. CV005-02046-PHX-ROS (November 8, 2012).

Plaintiff is not asking the Court to do anything out of the ordinary. Not only do the majority of courts, including New Mexico, favor sharing provisions, legal scholars and commentators across the country do also. *The ABA Report of the Action Commission to Improve the Tort Litigation System*, 37, published in 1987, concluded as follows: <u>Recommendation No. 10-</u> "Where information obtained under secrecy agreements (a) indicates a risk of hazards to other persons, or **(b) reveals evidence relevant to claims based on such hazards, courts should ordinarily permit disclosure of such information, after hearing, to other plaintiffs or to government agencies who agree to be bound by appropriate agreements or court orders to protect the confidentiality of trade secrets and sensitive proprietary information**." (emphasis added.)

Other commentators have noted that since the defendant possesses infinitely superior knowledge and resources, the need for cooperation among plaintiff attorneys is even greater than that of defendants.. Because of the complexity of modern litigation, it is often difficult, if not impossible, for an individual Plaintiffs' counsel to adequately prepare the client's case single-handedly, particularly when faced with a well-prepared opponent. Hare and Gilbert, *Discovery in Products Liability Cases: The Plaintiff's Plea for Judicial Understanding*, 12 Am.J. Trial Advoc. 413 (1989). The sharing of information among plaintiff attorneys accomplishes four main goals:

(1) minimizes the advantage of the defendant and allows the plaintiff to adequately prepare his case; (2) enhances the speed and efficacy of the discovery process; (3) provides a mechanism for verifying the accuracy of a manufacturer's response to the Plaintiffs' discovery requests; and (4) reduces the cost of preparing each case. Hare, et al., *Confidentiality Orders in Products Liability Cases*, 12 Am. J. Trial Advoc. 597 (1987). The law recognizes that "shared discovery is an effective means to insure full and fair disclosure" because parties "subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare those responses." *Garcia* v. *Peeples,* 734 S.W. 2d 343, 347 (Tex. 1987). Accordingly, "public policies favoring shared information require that any protective order be carefully tailored to protect [a party's] proprietary interests while allowing an exchange of discovered documents." *Id.* at 348. Shared discovery also makes the judicial system more efficient. See *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681-82 (1958) (the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what facts reveal, not by what facts are concealed). The protective order should allow shared discovery with parties with similar cases against a defendant, "substantially similar" as a "predicate for the proof of similar accidents is defined ... by the … issue." *Jackson* v. *Firestone Tire & Rubber Co.,* 788 F. 2d 1070, 1083 (5th Cir.1986). "Shared discovery with attorneys working on cases involving allegedly defective tread belt separation of Cooper tires will avoid duplicative and costly discovery." *Idar v. Cooper Tire & Rubber Co*., 2011 U.S. Dist. Lexis 26013, *3 (S.D. Tex. 2011).

The Government even suggests such provisions. In 2016, the United States Government Department of Transportation's National Highway Traffic Safety Administration issued a cornerstone guide establishing the best practices for protective orders: *NHSTA Enforcement Guidance Bulletin 2015-01: Recommended Best Practices for Protective Orders and Settlement*

*Agreements in Civil Litigation*, 81 Fed. Reg. 13026 (Mar. 11, 2016). (NHTSA begins its Best Practices for Protective Orders by explaining that this is a critical safety issue: *[S]afety-related information developed or discovered in private litigation is an important resource for NHTSA.* This Enforcement Guidance Bulletin sets forth NHTSA's recommended guiding principles and best practices to be utilized in the context of private litigation. To the extent protective orders, settlement agreements, or other confidentiality provisions prohibit information obtained in private litigation from being transmitted to NHTSA, such limitations are contrary to Rule 26 of the Federal Rules of Civil Procedure, its state corollaries, and sound principles of public policy. Although such restrictions are generally prohibited by applicable rules and law, the Agency recommends that litigants include a specific provision in any protective order or settlement agreement that provides for disclosure of relevant motor vehicle safety information to NHTSA, regardless of any other restrictions on the disclosure or dissemination of such information…However, in order to fully exercise its regulatory authorities and powers, the Agency must be made aware of the need to do so in the first instance. Both Agency experience and that of several other commenters provide several examples of a defendant failing to accurately and timely report relevant safety-related information to NHTSA. From this important regulatory responsibility, NHTSA concluded *"the safety of the public should be given considerable weight in determining whether to restrict access to information"* because *"the public health and safety concern should be of paramount significance in drafting and approving protective orders." Id*. at 13029.

While holding after holding could be cited, one final example is offered in response to Amazon's Motion. One of the seminal cases on "information sharing" arose from the famous "Love Canal" case. In *US. v. Hooker Chemicals & Plastics Corp*., 90 F.R.D. 421, 426 (E.D.N.Y. 1981), the Court denied the defendant manufacturer's motion for a restrictive protective order. In

permitting information sharing, the Court reasoned as follows: "Hooker also argues that the disclosure of information garnered through discovery will be detrimental to its position in parallel lawsuits. This is unquestionably true. However, this is not a reason for a court to impose a protective order. Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purpose of the Federal Rules of Civil Procedure. Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources. This is particularly true in lawsuits where the resources available to the parties are uneven." 90 F.E.D. 426 (internal citations omitted) (emphasis added).

Defendants proposed protective order will drive up discovery expenses and to make it difficult for opposing counsel to assimilate and understand the information being sought." In sum, Defendant has not shown good cause to prevent the sharing of information Which is the overwhelming norm), and prohibiting such sharing is against public policy. See *Id*. Accordingly, the Plaintiff asks this Court to enter its proposed version of the order, allowing information to be shared. *Exhibit 2*.

### VIII. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court deny Amazon's motion for a protective order. If the Court is inclined to grant any portion of Amazon's motion, Plaintiffs request that the Court include a provision allowing Plaintiffs' counsel and experts to share the discovery materials with other necessary individuals, in order to ensure adequate preparation for trial.

Respectfully submitted,

**SCHERR LAW FIRM, PLLC**
Attorney for Plaintiffs
521 Texas Ave.
El Paso, Texas 79901
(915) 881-4111
(915) 881-4119 Facsimile
mscherr@scherrlawfirm.com

*/s/ Maxey M. Scherr*
**MAXEY M. SCHERR**
New Mexico State Bar No. 140992

And

Brenna L. Sanchez
**DUNK LAW FIRM, PLLC**
Attorney for Plaintiffs
717 Franklin St.
Houston, TX 77002
(713) 223-1435
(888) 407-2520 Facsimile
bsanchez@dunklawyers.com
Attorneys for Plaintiff
*Rasheem Carter and Peter Wirth*
*On behalf of the Estate of Ervin Burton,*
*Deceased, Ervin Burton Sr.*

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this 31st day of March 2025, the foregoing instrument was filed electronically through the CM/ECF system, and that I caused a copy of the same to be served by email to:

Kevin D. Homiak
Rebekah L. Nickel
Kendra M. Sendler Kumor
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
(303) 244-1800
(303) 244-1879 Fax
homiak@wtotrial.com
nickel@wtotrial.com
kumor@wtotrial.com
*Attorneys for Amazon Defendants*

Jeffrey M. Croasdell
Lauren T. Winston
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, NM 87103-1888
(505) 765-5900
jcroasdell@rodey.com
lwinston@rodey.com
*Attorneys for Ryder Truck Rental Inc.,*
*UZGlobal LLC dba Fastplus Cargo and*
*Osmany Hanna Roldan*

*/s/ Maxey M. Scherr*
**MAXEY M. SCHERR**