IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RASHEEM CARTER, PETER WIRTH *on
behalf of the estate of* ERVIN BURTON*, deceased*,
and ERVIN BURTON, SR.,

     **Plaintiffs,**

v.                                                                            No. 1:23-cv-01013-MV-JHR

UZGLOBAL LLC d/b/a FASTPLUS CARGO,
OSMANY HANNA ROLDAN,
AMAZON.COM INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC. d/b/a PRIME,
and RYDER TRUCK RENTAL INC.,

     **Defendants.**

## ORDER IMPOSING SANCTIONS ON PLAINTIFFS' COUNSEL FOR RULE 11 VIOLATION

THIS MATTER comes before the Court on its Orders to Show Cause [Docs. 101, 114] for Plaintiffs' counsel Maxey Scherr's use of fake cases in three of her briefs. Plaintiffs submitted responses to the show cause orders, [Docs. 114-1, 115], as did Amazon.com Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc. ("Amazon Defendants") [Docs. 114-2, 116].[1] The Court, having reviewed the responses, the case record, and applicable law, finds Ms. Scherr violated Fed. R. Civ. P. 11(b) and will impose sanctions pursuant to Fed. R. Civ. P. 11(c).

## I.     PROCEDURAL BACKGROUND

On March 17, 2025, the Amazon Defendants moved for a protective order to limit the dissemination of trade secrets and confidential information that they produced in discovery. [Doc. 77]. Plaintiffs filed a response on March 31, 2025 ("March response brief"). [Doc. 85]. The March

---

[1] The remaining Defendants, UZGlobal LLC, Osmany Roldan, and Ryder Truck Rental, Inc. ("UZGlobal Defendants") joined the Amazon Defendants' position but did not submit separate briefing. *See* [Doc. 114-2].

response brief included the names of counsel Brenna Sanchez and Ms. Scherr with Ms. Scherr's electronic signature affixed. *Id.* at 18. The Amazon Defendants replied on April 14, 2025. [Doc. 86]. In the reply brief, the Amazon Defendants noted that Plaintiffs cited *Harris v. United States*, 204 F.R.D. 560 (D. Colo. 2001), a case which counsel could not locate. *Id.* at 9 n.1.

On June 3, 2025, Plaintiffs filed three separate motions to compel against the UZGlobal Defendants. [Docs. 91–93]. Ms. Scherr signed these motions as well. Then, on June 12, 2025, Plaintiffs withdrew all three and the parties requested a status conference with the Court. [Doc. 95]. On June 20, 2025, the parties alerted the Court that Plaintiffs' March response brief and motions to compel could contain fake cases. [Doc. 98 text only]. The parties believed these cases may have been "hallucinated" by an artificial intelligence ("AI") drafting program. *Id.* On June 27, 2025, the Court issued its first show cause order, identifying three additional cases in the March response brief that it could not locate. [Doc. 101, at 2]. The Court ordered Plaintiffs to (1) produce PDF versions of every case cited in the March response brief and three motions to compel; (2) describe the actions of each attorney involved in the creation of the briefs; (3) describe how counsel became aware of the non-existent cases; (4) identify any other filings that could contain non-existent cases; and (5) show cause why counsel should not be sanctioned. *Id.* at 3.

## II.     BRIEFING SUMMARY

Plaintiffs identified sixteen total cases across the March response brief and two motions to compel that did not exist. [Doc. 114-1, at 2–3]. Plaintiffs explained that an associate attorney employed at Ms. Scherr's firm had drafted the filings at issue. *Id.* at 4. Plaintiffs stated that Ms. Scherr reviewed these filings for "writing style, argument, etc." but did not verify the cases cited. *Id.* Plaintiffs began reviewing their other filings "immediately" once an attorney alerted Ms. Scherr to a similar issue in a different case on June 11, 2025. *Id.* Counsel withdrew the three problematic

motions to compel the next day and later requested to amend the March response brief. *Id.* Plaintiffs also claimed to have alerted Defendants' counsel to the problem on June 13th. *Id.* Plaintiffs argued that no sanctions were warranted because Ms. Scherr acted immediately to correct the error, took a CLE on "how to identify artificially generated legal citations," and self-reported to the disciplinary board of the New Mexico Supreme Court. *Id.* at 5.

Defendants objected that Plaintiffs' response was insufficient. [Doc. 114-2, at 2]. They stated that Plaintiffs did not specify whether AI was used nor what actions Ms. Scherr, co-counsel Brenna Sanchez, and the other attorney took to create, verify, edit, and file the briefs. *Id.* Defendants also dispute Plaintiffs' claim that they identified their own mistakes and acted immediately, since the Amazon Defendants alerted Plaintiffs of an unlocatable case in their filings in April 2025. *Id.* at 4 n.3. The Court found further explanation from Plaintiffs' counsel was warranted and issued a second show cause order. [Doc. 114].

In their supplemental response, Plaintiffs state that Ms. Scherr and associate attorney Raquel Aguirre created the briefs. [Doc. 115, at 1]. Ms. Aguirre researched and drafted the briefs, and Ms. Scherr then reviewed but did not cite-check them before filing. *Id.* at 2. Plaintiffs believe Ms. Aguirre used AI but do not know what AI program she used. *Id.* Ms. Scherr's firm does not permit the use of AI for legal research and writing, and Ms. Scherr had terminated Ms. Aguirre for a separate issue by the time the parties discovered the fake cases. *Id.* at 2–3. With respect to when exactly Plaintiffs knew their briefs contained fake cases hallucinated by AI, Ms. Scherr states she saw the Amazon Defendants' April 14th footnote but did not realize it meant the case was fake until contacted by the attorney in June 2025. *Id.* at 4. In response, the Amazon Defendants request sanctions against Ms. Scherr encompassing (1) attorney fees and costs; (2) submission of any

3

sanction order to her clients; (3) creation of policies for the use of AI and cite-checking at Ms. Scherr's and Ms. Sanchez's firms; and (4) fines. [Doc. 116, at 7–8].

### III.     APPLICABLE LAW

The signing attorney to any filing with the court certifies that the legal contentions therein "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). That certification avers to the court that the attorney read the filing, sufficiently verified the facts and law cited, and confirmed the arguments therein are grounded in both. *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991)). An attorney cannot delegate her obligations under Rule 11, meaning her signature on any filing subjects her to Rule 11(b) even if she relied on others to draft or review it. *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1347 (E.D. Okla. 2025); *Lipe v. Albuquerque Pub. Schs.*, No. 23-cv-00899, 2025 WL 2695244, at *3 (D.N.M. Sep. 22, 2025).

Courts follow a two-step process when applying Rule 11. *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1057 (D.N.M. 2025). First, the court must determine whether the signing attorney violated her Rule 11 obligations when she filed the brief in question. *Id.* The standard is objective reasonableness: whether the signing attorney failed to act as an objectively reasonable attorney would have prior to signing and filing the problematic document. *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990). Therefore, a finding of subjective bad faith by the signing attorney is not required. *Dehghani*, 782 F. Supp. 3d at 1059. Second, the court must impose the least severe sanction sufficient to accomplish the purposes of Rule 11 sanctions: punish the present violation, deter future violations, compensate the adversely affected, and facilitate case

4

management. *White*, 908 F.2d at 683; *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018). Courts enjoy considerable discretion in fashioning an appropriate sanction. *King*, 899 F.3d at 1148.

#### IV.    ANALYSIS

The Court finds that Ms. Scherr violated Rule 11. This Court and others have firmly established that submitting documents with AI-hallucinated cases is objectively unreasonable. *Dehghani*, 782 F. Supp. 3d at 1058; *Lipe*, 2025 WL 2695244, at *3; *Wadsworth*, 348 F.R.D. at 495; *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-cv-00281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024). While Ms. Scherr states that another attorney wrote the briefs, her signature pursuant to Rule 11 makes her just responsible as if she had written the briefs herself. *Dehghani*, 782 F. Supp. 3d at 1059. Ms. Scherr concedes sixteen cases in Plaintiffs' March response brief and two motions to compel do not exist and were likely hallucinated by AI.[2] Ms. Scherr further concedes that she saw the Amazon Defendants' notice that her March response brief contained an unlocatable case in April 2025 but proceeded to file the two compromised motions to compel in June. [Doc. 116, at 4]. Ms. Scherr did not review her briefs in this case until alerted a second time by another attorney. [Doc. 116, at 4]. And even without notice from other attorneys or an in-depth

---

[2] The sixteen fake cases are *Archer v. West Electric Co.*, 110 F.R.D. 704 (D. Colo. 1986) [Doc. 85, at 3]; *Huddleson v. United States*, 627 F.3d 1083 (10th Cir. 2010) [Doc. 85, at 3]; *McNeil v. United States*, 508 F.3d 674 (10th Cir. 2007) [Doc. 85, at 4]; *Harris v. United States*, 204 F.R.D. 560 (D. Colo. 2001) [Doc. 85, at 5]; *Fox v. Caldera*, No. 97-2166, 1999 WL 820199 (10th Cir. Oct. 14, 1999) [Doc. 91, at 7]; *Martinez v. Swift Transp. Co., Inc.*, No. CIV 12-0074 JB/WPL, 2013 WL 5620718 (D.N.M. Sept. 19, 2013). [Doc. 91, at 7; Doc. 93, at 7, 11, 15, 18]; *Perez v. Greyhound Lines, Inc.*, No. EP-18-CV00088-DCG, 2019 WL 8325155 (W.D. Tex. Oct. 2, 2019) [Doc. 91, at 12]; *Hill v. N.Y. Transit, Inc.*, No. 1:18-CV-00169, 2019 WL 926879 (D. Utah Feb. 26, 2019) [Doc. 91 at 12]; *Flores v. Union Pac. R.R. Co.*, 310 F.R.D. 596, 603 (D. Colo. 2015) [Doc. 91, at 12]; *Stallworth v. E.Z. Transp., Inc.*, 202 F.R.D. 676 (M.D. Ala. 2001) [Doc. 93, at 6]; *Jenkins v. Cagle's, Inc.*, 2012 WL 1575079 (N.D. Ga. May 4, 2012) [Doc. 93, at 18]; *Dawson v. Contractors Transp. Corp.*, No. 1:18-CV-03152, 2019 WL 6696410 (D. Colo. Dec. 9, 2019) [Doc. 93, at 22]; *Perez v. El Tequila, LLC*, No. 12-CV- 588, 2013 WL 11553036 (N.D. Okla. Oct. 21, 2013) [Doc. 93, at 23]; *Smith v. TFI Family Servs., Inc.*, 2017 WL 2335660 (D. Kan. May 30, 2017) [Doc. 93, at 24]; *Perez v. Greyhound Lines, Inc.*, No. 13-CV-705, 2014 WL 5023657 (D.N.M. Oct. 8, 2014) [Doc. 93, at 24]; *Anderson v. Werner Enterprises, Inc.*, No. 8:11CV27, 2012 WL 2871744 (D. Neb. July 12, 2012) [Doc. 93, at 24].

case search, an objectively reasonable attorney would have noticed something wrong in these briefs with a cursory review. *See Wadsworth*, 348 F.R.D. at 496. For example, the March response brief's hallucinated cases are incorrectly formatted, and the brief itself rested almost entirely on out-of-district, out-of-circuit authorities. *See* [Doc. 85]. By failing to make objectively reasonable efforts to review the March response brief and two motions to compel, Ms. Scherr violated Rule 11.

Courts have found appropriate sanctions in similar instances can include four-figure monetary fines, self-reporting to disciplinary boards and clients, mandatory CLE courses, and attorney's fees and costs. *Dehghani*, 782 F. Supp. 3d. at 1059; *Lipe*, 2025 WL 2695244, at * 4 (collecting cases); *Mattox*, 807 F. Supp. 3d at 1349–50; *see also* Fed. R. Civ. P. 11(c)(4). But to award attorney fees, the court must weigh the reasonableness of the fees requested *and* the minimum amount sufficient to deter misconduct, the attorney's ability to pay, and other relevant factors. *King*, 899 F.3d at 1155.

In this case, Ms. Scherr did not attempt to avoid responsibility. [Doc. 114-1, at 5]. She also self-reported to the New Mexico state bar, took an instructive CLE course, and offered to pay reasonable attorney fees. *Id.* However, the filing of fake cases is a serious ethical breach: it wastes the time and money of the parties, undermines the legitimacy of court proceedings, and injures the reputation of the legal profession. *Wadsworth*, 348 F.R.D. at 498 (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)). Ms. Scherr had adequate notice in April to discover her error and avoid filing more fake cases but did not. As a result, the Amazon Defendants incurred significant, unnecessary fees addressing the Rule 11 violation. Therefore, in light of these factors and its previous decisions, the Court will impose the sanctions below.

## V.    <u>CONCLUSION</u>

For the reasons above, the Court imposes the following sanctions:

1. The Court ORDERS Ms. Scherr to self-report this incident to the proper disciplinary board for the Texas state bar, attach a copy of this Order to that report, and submit a copy of this Order to the New Mexico state bar to include with her previous report.

2. The Court ORDERS Ms. Scherr to pay a fine of $1,000 to the Clerk of Court.

3. The Court ORDERS Ms. Scherr to submit proof of attendance at an AI CLE course. *See* [Doc. 114-1].

4. The Court ORDERS Ms. Scherr to comply with these sanctions within **fourteen (14)** days of this Order.

5. The Court ORDERS that the Amazon Defendants may move for an award of attorney fees and costs against Ms. Scherr for their research on the fake cases and their responses to the show cause orders. [Docs. 85, 91, 93, 114-2, 116].

6. The Amazon Defendants shall file their motion, if any, within **fourteen (14) days** of this Order. Within **seven (7) days** of service of the motion, Ms. Scherr may file a response, if any, contesting the figure under Rule 11. *See King*, 899 F.3d at 1155. The Amazon Defendants may file a reply, if any, within **three (3) days** of service of the response.

7. Ms. Scherr may not charge the costs of any of these sanctions to Plaintiffs nor recoup them pursuant to any fee agreement with Plaintiffs.

IT IS SO ORDERED.

_____
HON. JERRY H. RITTER
United States Magistrate Judge

7